**Claudine Sherron** (California Bar No. 296499)
**Theresa Mason** (California Bar No. 271022)
**Harpreet Singh** (California Bar No. 318041)
*The Sherron Law Firm*
1101 Standiford Avenue, Suite A1
Modesto, CA 95350
Tel: (209) 427-2200
Harpreet@Sherron-Law.com
*Attorney for Plaintiffs*

Electronically Filed
8/13/2019 8:00 AM
Superior Court of California
County of Stanislaus
Clerk of the Court
By: Kelsi Nannie, Deputy

## Superior Court of the State of California

### For the County of Stanislaus

**Paulo Matos**, an Individual, and **Amadeu Ramos**, an Individual, and **Monica Matos**, an Individual

*Plaintiffs*,

vs.

**ABM General Services, Inc., Flowers Baking Co. of Modesto, LLC**, and Does 1 through 100, inclusive,

*Defendants.*

Case Number: CV-19-004708

Claims applicable to both Paulo Matos and Amadeu Ramos

**FIRST AMENDED COMPLAINT**

1. **FAILURE TO COMPENSATE FOR ALL HOURS WORKED** (Lab. Code. §§ 200-204, 216, 223, 225.5, 500, 510, 558, 1197, 1194, 1198, IWC Wage Orders);
2. **FAILURE TO PAY OVERTIME WAGES** (Lab. Code. §§ 200-204, 223, 225.5, 500, 510, 1194, 1198, IWC Wage Orders);
3. **FAILURE TO PAY MINIMUM WAGE** (Lab. Code. §§ 223, 1194, *et.seq.*);
4. **FAILURE TO PROVIDE MEAL AND REST BREAKS** (Lab. Code. §§ 226.7, 512; IWC Wage Orders);
5. **FAILURE TO MAINTAIN ACCURATE RECORDS** (Lab. Code. §§ 1174, 1174.5);
6. **FAILURE TO FURNISH WAGE AND HOUR STATEMENTS** (Lab. Code. §§ 226(e), 226.3);
7. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
8. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
9. **FRAUD AND DECEIT** (Civ. Code

§§1571-1574 and 1709-1710);
10. **BREACH OF CONTRACT** (Civil Code);
11. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
12. **UNFAIR BUSINESS PRACTICES** (Bus. & Prof. Code. § 17200 et. seq.)

Additional claims applicable to Paulo Matos

13. **UNLAWFUL RETALIATION IN VIOLATION OF PUBLIC POLICY** (Lab. Code. §§ 98.6. 232, 232.5, 1102.5, *Tameny v. Atlantic Richfield Company*);
14. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** (*Tameny v. Atlantic Richfield Company*);
15. **PROMISSORY ESTOPPEL** (*C & K Engineering Contractors v. Amber Steel Co.*);
16. **FAILURE TO PROVIDE ADEQUATE TIME OFF** (Lab.Code. §§ 551, 552, 554 558)

Additional claim applicable to Monica Matos

17. **LOSS OF CONSORTIUM** (Civil Code, *Rodriquez v. Bethlehem Steel Corp*)

**JURY TRIAL DEMANDED**

Plaintiffs Paulo Matos and Amadeu Ramos (individually "Plaintiff Matos" "Plaintiff Ramos" and collectively "Plaintiffs") file this Complaint against Defendant ABM General Services, Inc. and Flowers Baking Co. of Modesto, LLC (hereinafter "Defendants") and DOES 1-100 inclusive ("DOE Defendants") (collectively "Defendants"). Plaintiffs hereby demands a jury trial on all causes of action. Plaintiffs alleges the following:

<u>PARTIES AND VENUE</u>

1.     At all times herein mentioned, Plaintiff Matos, was and is a competent adult and resident of the State of California, San Joaquin County. Plaintiff Matos began working for Defendants as a route sales driver in March 22, 2016. While working for Defendants, Plaintiff

1   Matos's job duties included but were not limited to driving and delivering Defendants' bakery

2   products.

3       2.      Jurisdiction of the subject matter in this Court is proper because the cause of action

4   herein arose by virtue of an employment contract within the state of California, County of

5   Stanislaus.

6       3.      Venue of this action is proper within this Court at the business location where

7   Plaintiff worked for Defendant is located in Modesto, California, within the jurisdiction of this

8   Court.

9       4.      Plaintiffs are ignorant of the true names and capacities of the Defendants sued

10  herein as Does 1 through 100 inclusive, and therefore sues said Defendants by such fictitious

11  names.  Plaintiffs will amend this Complaint to allege their true names and capacities when

12  ascertained.

13      5.      Plaintiff Ramos was and is a competent adult and resident of the State of California,

14  San Joaquin County.  Plaintiff began working for Defendants as a route sales driver in February

15  2017. As a route sales driver, Plaintiff Ramos's job duties included, but were not limited to, driving

16  and delivering Defendants' bakery products.

17      6.      Jurisdiction of the subject matter in this Court is proper, because the cause of action

18  herein arose by virtue of an employment contract within the state of California, County of

19  Stanislaus.

20      7.      Venue of this action is proper within this Court at the business location where

21  Plaintiff worked for Defendant is located in Modesto, California, within the jurisdiction of this

22  Court.

23      8.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein

24  as Does 1 through 100 inclusive, and therefore sues said Defendants by such fictitious names.

25  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

26                              Defendants

27      9.      At all times material herein, Defendant AMB Industry Groups, LLC ("ABM")

28  was and is a Delaware corporation registered to do business in the State of California, including

*Matos v. ABM, et al*          Page 3 of 42        Case Nos.: CV-19-004708

but not limited to conducting business within Stanislaus County with its corporate headquarters located in Sugar Land, Texas.  Defendant ABM is in the commercial facility service industry. On information and belief, Defendant ABM is a facility management provider in areas including electrical and lighting, mechanical, janitorial services, landscape and grounds, and parking and transportation.  At all relevant times alleged herein, Plaintiff is informed and believes that Defendant ABM is authorized to and does conduct business in the State of California in the commercial facility services industry including but not necessarily limited to Stanislaus County.

10.    At all times material herein, Defendant Flowers Baking Company of Modesto, LLC, was and is a California Limited Liability Company registered to do business in the State of California, including but not limited to conducting business within Stanislaus County, with its corporate headquarters located in Modesto, California.  Defendant Flowers Baking Company of Modesto is in the baked goods industry.  On information and belief, Defendant Flowers Baking Company of Modesto produces baked breads, buns and rolls.  At all relevant times alleged herein, Plaintiff is informed and believes that Defendant Flowers Baking Company of Modesto is authorized to and does conduct business in the State of California in the baked goods industry, including but not necessarily limited to Stanislaus County.

11.    Plaintiffs are informed and believe, and thereon allege that Defendant Flowers Banking Company of Modesto, LLC ("Flowers") while contracting with Defendant ABM, retained sufficient control of the wages, hours, and conditions of employment of Plaintiff and in doing the acts hereinafter alleged, and that each corporation is liable under California and federal law for the damages sustained by Plaintiffs.

12.    Plaintiffs are informed and believe and thereon allege that Defendants were their employers under California law, that all defendants herein did acts consistent with the existence of an employer-employee relationship with Plaintiffs. Moreover, Defendants and Plaintiffs were controlled, directly or indirectly, by Flowers.

13.    The Defendants identified as DOES 1 through 100, inclusive, were at all times herein-mentioned, agents, business affiliates, successors and/or predecessors-in-interest, officers, directors, partners and/or managing agents of some or each of the remaining defendants.

1   Plaintiffs is informed and believes, and on that basis, alleges that, at all times herein-mentioned

2   each of the Defendants identified as DOES 1 through 100, inclusive, employed and/or exercised

3   control over the conditions of Plaintiffs which led to the instant lawsuit and which are described

4   herein.  In doing the acts herein alleged, each Defendant is liable and responsible to Plaintiffs for

5   the acts of every other Defendant.  The true names and capacities of the DOE Defendants,

6   whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore

7   sues such DOE Defendants by fictitious names pursuant to California Code of Civil Procedure §

8   474.  Plaintiffs is informed and believes that the DOE Defendants are residents of the State of

9   California.  Plaintiffs will amend this Complaint to show such DOE Defendants' true names and

10  capacities when they are known.

JURISDICTION AND VENUE

11

12          14.    This Court is the proper Court, and this action is properly filed in the Superior Court

13  of the State of California for the County of Stanislaus, because Defendants ABM and Flowers

14  transact business within this County at 736 Mariposa Road, Modesto, California.   Plaintiff

15  performed work for Defendants and experienced the legal violations that are subject of this

16  Complaint in the County of Stanislaus.

17          15.    This Court has jurisdiction of the Plaintiff for damages, interest thereon, related

18  penalties, injunctive and other equitable relief, restitution of ill-gotten benefits arising from

19  Defendants' unlawful, unfair and/or fraudulent business practices, and attorney fees and costs

20  pursuant to, *inter alia*., California business and Professions Code §§ 17200-172008, and the

21  statutes cited herein.

FACTS APPLICABLE TO PAULO MATOS

22

REGARDING CAUSES OF ACTION

23

24          16.    Plaintiff Matos is a 38-year-old male.  Matos began his employment with

25  Defendants on March 22, 2016 as a driver salesperson.

26          17.    On a typical day, Matos reported for work at 2:00 a.m. at the Flowers warehouse

27  at 736 Mariposa Rd, Modesto, CA 95354.

28          18.    On a typical day, it would take two and a half hours to organize the bread.

19.     Due to the volume of bread to be organized, Matos was unable to start his deliveries until 5:00 a.m.

20.     Initially, Matos had an average of ten deliveries a day, some of these deliveries being further than 100 miles from the Flowers warehouse.

21.     Like all ABM and Flowers employees, Matos was required to "clock in" and "clock out" using the application on his personal cell phone or to fill out a "Driver's Time Record" paper timecard. ABM and Flowers would make sure management was requiring their employees to document meal and rest breaks "on paper" regardless of whether those breaks were fabricated and not actually taken.

22.     As ABM and Flowers became aware that Matos was a hardworking, diligent worker who rarely asked questions, they continued to increase his workload.  Over time Matos' workload was increased to 13 or 14 deliveries per day.

23.     Matos worked shifts in excess of 15 hours a day; and at times, worked seven days a week.

24.     Taking a meal or a rest break was an impossibility for Matos, because it would push back his delivery times at each subsequent account. Even the customers at each account along Matos's route would ask him "Don't you ever take a break?" to which he had no answer.

25.     Frequently, Matos would cover for drivers on other routes that were absent or just couldn't meet the demands placed on them by management. Matos was always the "go-to guy" and would frequently help out by handling deliveries on other geographically distant routes.

26.     At all times during his employment with ABM and Flowers, Matos performed his job satisfactorily and received compliments from accounts on his route for his high level of service.

27.     Because Matos worked long hours without objecting, Defendants continued to increase his work load. He was viewed as a "hot shot" and a "workhorse".

28.     Matos was discouraged from taking any time off though "company policy" permitted it.  Matos frequently worked seven days a week and would rarely see his family.

29.     When Matos would request vacation or holiday days off to be with his young

family, which he had in fact accrued and was legally entitled to, management was consistently unable to accommodate those requests.

30.     Although Defendants provided Matos with paperwork documenting his right to receive vacation days, meal and rest breaks as an hourly employee, in practice Defendants violated their own "policies" which they purported to follow on paper.

31.     Throughout the time that Matos was working for Defendants, Matos was required to "clock out" on paper or through the application on his personal cell phone to make it appear that he was taking breaks, when in fact, Matos worked through those breaks because he was on call and making deliveries during these supposed meal and rest periods.

32.     ABM and Flowers maintained a work environment where meal and rest breaks had to be documented to comply with "company policy" but were never taken. This was the general practice and the drivers generally did not question it.

33.     In conversations with other driver salespeople, Matos learned that driver salespeople generally didn't question this "company policy" for fear of losing their jobs.

34.     Matos' Manager, Mike Siriano, set the expectation that employees work through their lunch break. Matos was verbally told by his Manager Mr. Siriano that the deliveries needed to be made, and if getting them done meant working through meal and rest breaks, that was acceptable.

35.     At all times during Matos' shift, and during meals and breaks, he was required to keep his phone on, answer calls, make deliveries, and respond when all needs arose.

36.     Further, once Matos was clocked out, and after his shift was completed, and he no longer had use of the company delivery truck, he would frequently receive calls to pick up bread and was expected to use his personal car to complete the delivery. In fact, he did use his personal car to complete these deliveries on a regular basis. Matos was not getting paid for these hours, and was using his own gas and putting wear and tear on his car, for the benefit for Defendants' customers.

37.     ABM and Flowers had very high turnover of drivers and management due to the heavy workload and lack of breaks.  Frequently, drivers would experience burnout and quit

*Matos v. ABM, et al*                 Page 7 of 42          Case Nos.: CV-19-004708

1   without notice, leaving routes needing to be covered, causing burnout to the existing drivers.

2          38.     Frequently, Matos would cover for drivers on other routes that had quit, were

3   absent, or just couldn't meet the demands placed on them by management. Matos was always the

4   "go-to guy", and would frequently help out by handling deliveries on other geographically

5   distant routes after the route was "un-manned" due to a driver who had quit.

6          39.     Matos frequently received accolades from management as he filled in for other

7   drivers and made unscheduled last minute deliveries and pick-ups of bread.  He was frequently

8   used by management to "put out fires".

9          40.     As a result of this heavy workload, which frequently exceeded 100 hours in a

10   workweek, Matos was earning significant overtime. Matos' Manager, George Laris, was

11   receiving pressure from Flowers regarding the excessive overtime Matos was earning.

12          41.     Over time, Matos began to experience burnout from workweeks often exceeding

13   100 hours. When Matos complained to management, he was ignored, and his objections to the

14   heavy workload fell on deaf ears. In fact, when he expressed these sentiments to management,

15   specifically Mike Siriano and Rex (last name unknown), he was threatened with "if we cut your

16   hours, we will fire you" and he should be happy with the overtime hours and pay he was

17   receiving.

18          42.     Matos frequently requested of management that both his hours and deliveries be

19   reduced. Repeatedly he communicated that the workload was excessive, he was exhausted and

20   the level of deliveries he was performing was not sustainable.

21          43.     Instead of reducing Matos's workload, Mr. Laris created his own unlawful system

22   of trading "off the clock" work hours in exchange for the offer to compensate Matos with a

23   promise to provide him with a paid Saturday off with his family (which never happened).

24          44.     On August 13, 2016, Mr. Laris asked Paulo to begin working off the clock, even

25   after he was working eighteen-hour shifts.  Paulo did in fact work off the clock frequently and

26   this "off the clock" work became routine.

27          45.     In late 2016, Matos complained that his Penske truck was unsafe for him to use

28   and it needed an extra lift for it to be effective. The current lift that Matos was forced to use was

three and a half inches off the ground, thus ineffective for lifting trays of bread. Though he repeatedly asked for an extra lift for the Penske delivery truck, his requests were ignored.

46.     Because the Penske truck was not properly functioning, Matos had to lift all the trays of bread onto his truck manually. This daily activity of manually loading bread led to Matos developing a painful hernia in July 2017.

47.     Matos sought medical attention though he continued to suffer from pain due to his hernia. Matos continued to work his route though in intense pain. Matos had a family to support and was nervous about being without employment.

48.     ABM and Flowers management was aware of Matos' injury yet continued to demand that he work excessive hours, either on or off the clock, and communicated that they "knew he could handle it".

49.     In early January 2018, Matos developed a second hernia. Matos informed his manager George Laris of the persistent pain, but was ignored, and he continued to work his route.

50.     On or about January 23, 2018, Matos let his manager George Laris know that he had jury duty. Though his jury duty was cancelled, Mr. Laris told Matos that he needed to not come into work and remain on "stand-by" until he could come in and meet with a "big boss" who was to come into town.

51.     Matos was terminated on January 30, 2018 over the phone, without explanation.

<u>FACTS APPLICABLE TO AMADEU RAMOS</u>

<u>REGARDING CAUSES OF ACTION</u>

52.     Plaintiff Ramos is a 50-year-old male. Ramos began his employment with Defendants in Modesto as a driver salesperson in January of 2013. During June of 2013, Ramos purchased a route and a truck, and becoming an "individual owner". During this time period he was no longer an employee. As a "individual owner" Plaintiff Ramos became frustrated with the working conditions. Flowers tried to intimidate him and control everything he did. As an "owner"

EXHIBIT A  PAGE 23

the route was not very profitable, and he was immersed in unpleasant politics which he no longer wanted part of.

53.    In February of 2016, he sold his route and truck back to Flowers Bakery.

54.    Ramos had no relationship with Flowers Bakery again until January 27, 2017, when he returned as an employee to be a "driver salesperson".

55.    At all times during his employment with Defendants, Ramos was performing his job duties beyond satisfactorily.

56.    On a typical day, Ramos reported for work at 2:00 a.m., at the Flowers warehouse at 736 Mariposa Rd, Modesto, CA 95354.

57.    Ramos was required to either clock in and out using the application on his personal cell phone, or to fill out a "Driver's Time Record" paper timecard.

58.    On a typical day, it would take two and a half hours to organize the bread which prevented him from starting his deliveries until 5:00 a.m. Ramos would have an average of ten deliveries a day, with some of these deliveries being further than 100 miles from the Flowers warehouse.

59.    Ramos worked 12-hour shifts, 5 days a week.

60.    Although Defendants provided Ramos with paperwork documenting his right to receive meal and rest breaks as an hourly employee, in practice Defendants violated their own policies.

61.    During the time that Ramos was working for Defendants, Ramos was required to take on-call meal and rest periods. Further, during this time, Ramos was never given a break which relieved him of his work duties.

62.    Ramos's Manager, Mike Siriano, set the expectation that employees work through their lunch break. Ramos was verbally told by his Manager, Mr. Siriano, that the deliveries needed to be made, and if getting them done meant working through meal and rest breaks, that was acceptable. At all times during Ramos' shift and during meal and breaks, he was required to keep his personal cell phone on, answer calls, make deliveries, and respond when all needs arose.

63.    Ramos took his vacation week during September 14, 2019, and never returned.

EXHIBIT A PAGE 24

64.     Ramos ultimately suffered from exhaustion, and voluntarily quit.

## CAUSES OF ACTION APPLICABLE TO PAULO MATOS
## AND AMADEU RAMOS
### FIRST CAUSE OF ACTION
**FAILURE TO COMPENSATE FOR ALL HOURS WORKED**
(Lab. Code. §§ 200-204, 216, 223, 225.5, 500, 510, 558, 1197, 1194, 1198, IWC Wage Orders);

65.     Plaintiffs incorporate in this Cause of Action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

66.     Defendants were required to compensate Plaintiffs for all hours worked pursuant to the Industrial Welfare Commission Order 1-2001, California Code of Regulations, Title 8, Chapter 5, § 11070 and Labor Code §§ 200-204, 225.5, 500, 510, 558, 1197 1198.

67.     Labor § 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Orders.

68.     Labor Code § 1194.2 entitles non-exempt employers to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest.

69.     Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Orders for all hours worked.

70.     Labor Code § 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent, or employer of another person, to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

71.     Labor Code § 223 provides, "Where any statute of contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated be statute or contract. Plaintiffs routinely performed work for Defendants "off the clock." Accordingly, Defendants, are liable for this additional violation because Defendants were secretly paying less than the designated wage scale to the extent they were not paying Plaintiffs for this "off the clock" work.  Defendants failed to track the hours that

*Matos v. ABM, et al*          Page 11 of 42     Case Nos.: CV-19-004708

Plaintiffs worked or pay them for all hours worked, including overtime hours.

72.     Defendants refused to compensate Plaintiffs for some and/or all of the wages (including overtime wages) earned, in violation of the applicable California Wage Order, Title 8 of the California Code of Regulations and the California Labor Code.

73.     At all relevant times, Defendants were aware of, and were under a duty to comply with the wage and overtime provisions of the California Labor Code, including, but not limited to the Cal. Lab. Code §§ 200-204, 216, 225.5, 500, 510, 558, 1197, and 1198. Plaintiff has been deprived of his rightfully earned compensation as a direct and proximate result of Defendants' failure and refusal to pay said compensation. Under California employment laws and regulations, Plaintiffs are entitled to recover compensation for all hours worked, in addition to reasonable attorney's fees and costs of suit.

74.     Labor code § 216 provides, "In addition to any other penalty imposed by this article, any person, or an agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who: (a) Having the ability to pay, willfully refuses to pay wages due and payable after demand has been made. (b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such that indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due."

75.     As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, the Plaintiffs have sustained damages, including loss of earnings for hours worked, loss of earning for overtime hours worked, on behalf of the Defendants, in an amount to be established at trial and are entitled to recover attorney's fees and costs of suit.

## SECOND CAUSE OF ACTION

## FAILURE TO PAY OVERTIME WAGES

(Lab. Code. §§ 200-204, 223, 225.5, 500, 510, 1194, 1198, IWC Wage Orders);

(Against all Defendants)

76.     Plaintiffs allege and incorporate by reference all previous paragraphs.

77.     Labor Code § 1194 invalidates any agreement between employer and an

1  employee to work for less than the minimum wage required under the applicable Wage Order.

2      78.    Labor Code § 510 defines a day's work at 8 hours and states that any work in

3  excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek must

4  be compensated at the rate of no less than one and one-half times the regular rate of pay.

5  Pursuant to Labor Code section 1194(a), a plaintiff may bring a civil action for overtime wages

6  to recover wages, interest, penalties, attorney's fees and costs.

7      79.    Plaintiffs were entitled to receive one-and-one half times the hourly wages for

8  each hour worked past eight hours in one day, one-and-one half times the hourly wage for each

9  hour worked past 40 hours in one week and twice the hourly wage for each hour worked past 12

10  hours in one day and for all hours over 8 during his/her/their seventh consecutive day of work in

11  one week.

12      80.    Plaintiffs were entitled to twice his/her/their rate of pay for the work performed,

13  as Plaintiffs were often (1) working shifts that lasted more than twelve hours in length or (2)

14  worked shifts for Defendants of 8 hours or more on a seventh consecutive day of work.

15  Defendants were further aware that Plaintiff Matos was working "off the clock" exceeding his

16  eight-hour shift and seven consecutive days of work.

17      81.    At all relevant times, Defendants were aware of, and were under a duty to comply

18  with the wage and overtime provisions of the California Labor Code, including, but not limited

19  to Cal. Lab. Code §§ 200 et. seq. 510, 1194, and 1198. Defendants violated Labor Code § 204

20  when they failed to pay Plaintiffs for all wages earned for labor in excess of the normal work

21  period no later than the pay date for the next regular payroll periods. As a consequence for

22  violating Labor Code § 204, Defendants are subject to all applicable penalties including those

23  specified pursuant to Labor Code § 210. The exact amount of penalties will be proven at trial.

24      82.    At all relevant times, Defendants were aware of, and were under a duty to comply

25  with the wage and overtime provisions of the California Labor Code, including, but not limited

26  to Cal. Lab. Code §§ 200 et. seq. 510, 1194, and 1198. Defendants violated Cal. Lab. Code § 204

27  when they failed to pay Plaintiffs for all wages earned for labor in excess of the normal work

28  period no later than the pay date for the next regular payroll periods. As a consequence for

*Matos v. ABM, et al*          Page 13 of 42      Case Nos.: CV-19-004708

1  violating Labor Code §204, Defendants are subject to all applicable penalties including those

2  specified pursuant to Labor Code §210. The exact amount of penalties will be proven at trial.

3      83.    Labor Code § 223 provides, "Where any statute or contract requires an employer

4  to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while

5  purporting to pay the wage designated by statute or contract. Plaintiffs routinely performed work

6  "off-the clock." Thus, Defendants are liable for an additional violation to the extent Defendants

7  are in fact secretly paying less than the designated wage scale.

8      84.    Plaintiffs are entitled to interest on all due and unpaid wages pursuant to Labor

9  Code § 218.6.

10     85.    Pursuant to Labor Code § 1194, Plaintiffs seek to recover in a civil action the

11  unpaid balance of the full amount of the unpaid overtime compensation, including interest

12  thereon, reasonable attorney's fee and cost of suit.

### THIRD CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE

(Lab. Code. §§ 223, 1194, *et.seq.*);

(Against all Defendants)

17     86.    Plaintiffs allege and incorporate by reference all previous paragraphs.

18     87.    At all relevant times, Defendants were aware of and were under a duty to comply

19  with Cal. Lab. Code § 1194, *et seq.*

20     88.    Cal. Lab. Code § 1194(a) in relevant part provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and cost of suit.

> Further, Cal. Lab. Code section §1194.2 provides:

> In any action under 1193.6 of Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of

the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

Cal. Lab. Code Section 223 provides, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or contract. Plaintiffs routinely performed work "off-the clock." Thus, Defendants are liable for an additional violation to the extent Defendants are in fact secretly paying less than the designated wage scale.

89.     Defendants employed Plaintiffs, each of whom did not receive the applicable minimum wage for all hours worked on Defendants behalf. Said non-payment was the direct and proximate result of a willful refusal to do so by Defendants.

90.     As a direct and proximate result of Defendants unlawful conduct, as set forth herein, Plaintiffs have sustained damages, including loss of earning for hours worked on behalf of Defendants, in an amount to be established at trial, and are entitled to recover attorneys' fees and costs of suit.

## **FOURTH CAUSE OF ACTION**

## **FAILURE TO PROVIDE MEAL AND REST BREAKS**

(Cal. Lab. Code. §§ 226.7, 512; IWC Wage Orders);

(Against all Defendants)

91.     Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

92.     Defendants employed Plaintiffs within the State of California.

93.     At all relevant times, Defendants were aware of and was under a duty to comply with Cal. Lab. Code §§ 226.7 and 512.

94.     Cal. Lab. Code § 226.7 provides:

No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided.

95.    Moreover, Cal. Lab. Code § 512 provides:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

96.    By failing to consistently provide uninterrupted and unrestricted meal and rest periods to Plaintiffs, Defendants violated Cal. Lab. Code §§ 226.7 and/or 512, and §§ 11 and 12 of the applicable IWC Wage Order.

97.    By failing to consistently (1) provide meal breaks within the first five hours of a work shift, (2) provide uninterrupted thirty-minute meal periods, and/or (3) authorize and permit ten-minute rest periods to Plaintiffs, Defendants violated the Cal. Lab. Code and §§ 11 and 12 of the applicable IWC Wage Order.

98.    Even where Defendants' records specifically evidence that no meal and/or rest periods were provided to Plaintiff and Plaintiffs, Defendants refused to provide these employees with one hour of compensation for these respective violations as mandated by California law. Additionally, Plaintiffs have no written agreement for a meal waiver and employees were not able to reject the meal waiver. Plaintiffs alleges that Defendants have never paid the one hour of compensation to Plaintiffs.

99.     As a direct result of Defendants' unlawful conduct, as set forth herein, Plaintiff and Plaintiffs have sustained damages, including lost compensation resulting from the missed meal and/or rest periods, in an amount to be established at trial. As a further direct and proximate result of Defendants unlawful conduct, as set forth herein, certain Plaintiffs are entitled to recover "waiting time" and other penalties, in an amount to be established at trial, as well as attorneys' fees and costs, and restitution, pursuant to statute.

100.     Defendants required Plaintiffs to work at least three and one-half hours without a rest period of at least 10 minutes and failed to compensate the Plaintiffs, for said missed rest periods, as required by Cal. Lab. Code § 226.7 and Industrial Welfare Commission Wage Orders.

101.     Defendants required Plaintiffs to work more than six hours without a second rest period of at least 10 minutes and failed to compensate the Plaintiffs, for said missed rest periods, as required by Cal. Lab. Code § 226.7 and Industrial Welfare Commission Wage Orders.

102.     Defendants required Plaintiffs to work more than ten hours without a third rest period of at least 10 minutes and failed to compensate the Plaintiffs, for said missed rest periods as required by Cal. Lab. Code § 226.7, and Industrial Welfare Commission Wage Orders.

103.     Defendants required Plaintiffs to work more than five hours without a meal period of at least 30 minutes and failed to compensate the Plaintiffs, for said missed meal periods, as required by Cal. Lab. Code §§ 226.7 and 512, and Industrial Welfare Commission Wage Orders.

104.     Defendants required Plaintiffs to work more than ten hours without a second meal period of at least 30 minutes and failed to compensate the Plaintiffs, for said missed meal periods, as required by Cal. Lab. Code §§ 226.7 and 512, and Industrial Welfare Commission Wage Orders.

105.     Defendants failed to authorize and permit all entitled meal and rest periods by

requiring Plaintiffs to attend to business instead of authorizing and permitting Plaintiffs to take these meal and rest periods.

106.    Plaintiffs are not exempt from the meal and rest period requirements of the Employment as mentioned above Laws and Regulations.

107.    Plaintiffs did not willfully waive, through mutual consent with Defendants, any such meal and rest periods.

108.    Defendants did not pay premium payments to Plaintiffs for missed meal periods. Similarly, Defendants did not pay premium payments to Plaintiffs for missed rest periods.

109.    Plaintiffs have been deprived of their rightfully earned compensation for rest periods as a direct and proximate result of Defendants failure and refusal to pay said compensation. Plaintiffs are entitled to recover such amounts pursuant to Cal. Lab. Code § 226.7(b), plus interest thereon, attorney's fees, and costs of suit.

110.    Plaintiffs have been deprived of his/her/their rightfully earned compensation for meal periods as a direct and proximate result of Defendants failure and refusal to pay said compensation. Plaintiffs are entitled to recover such amounts pursuant to Cal. Lab. Code § 226.7(b), plus interest thereon, attorney's fees, and costs of suit.

### FIFTH CAUSE OF ACTION

### FAILURE TO MAINTAIN ACCURATE RECORDS

(Lab. Code. §§ 1174, 1174.5);

(Against all Defendants)

111.    Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112.    Cal. Labor Code § 1174 (d) provides:

> Every person employing labor in this state shall …[k]eep at a central location in the state … payroll records showing the hours worked

EXHIBIT A  PAGE 32

daily by and the wages paid to employees … These records shall be kept
in accordance with rules established for this purpose by the commission,
but in any case, shall be kept on file for not less than three years.

113.     Defendants failed to maintain accurate records of the hours worked and the wages paid to Plaintiffs. Defendants did not employ policies, procedure, and practices to track Plaintiffs actual hours worked.

114.     Plaintiffs were injured by Defendants failure to maintain accurate records, because, as alleged above, Plaintiffs did not receive pay for all hours worked, and thus suffered monetary damages due to Defendants' policies described above.

115.     Defendants are not exempt from the requirements of the Employment Laws and Regulations.

116.     Based on Defendants' conduct as alleged herein, Defendants are liable for damages and statutory penalties pursuant to Cal. Lab. Code §1174, 1174.5, and other applicable provisions to the Employment Laws and Regulations in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

## SIXTH CAUSE OF ACTION

## FAILURE TO FURNISH WAGE AND HOUR STATEMENTS

(Lab. Code. §§ 226(a), 226.3);

(Against all Defendants)

117.     Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

Cal. Labor Code § 226(a), provides:

(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the

*Matos v. ABM, et al*                  Page 19 of 42         Case Nos.: CV-19-004708

number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

118.   Cal. Labor Code § 226(e)(1) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

119.   Cal. Labor Code § 226(e)(2) provides:

An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

(ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to

aggregate deductions consistent with the requirements of item (4) of subdivision (a).

(iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

(iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

120.    Cal. Labor Code § 1174(d) provides:

Every person employing labor in this state shall …[k]eep at a central location in the state … payroll records showing the hours worked daily by and the wages paid to employees … These records shall be kept in accordance with rules established for this purpose by the commission, but in any case, shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

121.    Defendants knowingly failed to provide Plaintiffs with timely and accurate wage and hour statements showing the inclusive dates of the pay period, gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing them, all applicable hourly rate in effect during each pay period, and the corresponding number of hours worked at each hourly rate. Plaintiffs never received accurate wage statements at all, as Defendants had policies of managers who failed to use a system of accurately tracking all hours worked.

122.    Plaintiffs were injured by Defendants' failure to provide accurate wage statements, because, as alleged above, Plaintiffs could not determine whether they were paid properly and/or did not receive pay for all hours worked, and they suffered monetary damages due to Defendants' policies described above.

123.    Defendants are not exempt from the requirements of the Employment Laws and Regulations.

*Matos v. ABM, et al*                    Page 21 of 42          Case Nos.: CV-19-004708

124.     Based on Defendants conduct as alleged herein, Defendants are liable for damages and statutory penalties pursuant to Cal. Lab. Code § 226 and other applicable provisions of the Employment Laws and Regulations and other applicable provisions of the Employment Laws and Regulations in amounts to be established at trial, as well as attorneys' fees and costs, pursuant to statute.

**SEVENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(Cal. Civ. Code)

(Against all Defendants)

125.     Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

126.     The conduct complained of hereinabove was outside the conduct expected to exist in and outside the workplace, was intentional and done to cause Plaintiffs to suffer humiliation, mental anguish, and emotional and physical distress. Defendants conduct was done with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiffs.

127.     As a proximate result of Defendants' intentional infliction of emotional distress as hereinabove alleged, Plaintiffs have been harmed in that Plaintiffs have suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health. As a result of said distress and consequent harm, Plaintiffs have suffered such damages in an amount in accordance with proof at time of trial.

128.     Defendants, and each of them, engaging in the conduct as hereinabove alleged, acted oppressively and with reckless disregard of Plaintiffs' rights and safety, and thereby entitling Plaintiffs to an award of punitive damages.

129.    Defendants, and each of them, authorized, ratified, knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted oppressively and with reckless disregard of Plaintiffs' rights and safety, and thereby entitling Plaintiffs to an award of punitive damages.

130.    Plaintiff is informed and believes and, based thereon, alleges that the fictitious Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this cause of action.

131.    As a direct and proximate result of Defendants conduct, Plaintiffs sustained damages, including but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities and harm to his/her/their reputation, mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiffs are entitled to attorneys' fees, costs, and injunctive relief.

132.    Moreover, in that, at all times referenced herein, Defendants intended to cause or acted with reckless disregard of the probability of causing injury to Plaintiffs and, because Defendants was guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future, in addition to attorneys' fees and costs.

133.    Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiffs' rights. Upon information and belief, one or more of Defendants managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Civ. Code. Code)

*(Against all Defendants)*

134.     Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

135.     In the alternative, if said conduct of Defendants was not intentional, it was negligent. Plaintiffs are thereby entitled to general damages for the negligent infliction of emotional distress

136.     Plaintiffs are informed and believe and, based thereon, alleges that the fictitious Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

137.     As a direct and proximate result of Defendants conduct, Plaintiffs sustained damages, including but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities and harm to his/their reputation, mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiffs are entitled to attorneys' fees, costs, and injunctive relief.

138.     Moreover, in that, at all times referenced herein, Defendants intended to cause or acted with reckless disregard of the probability of causing injury to Plaintiffs and, because Defendants were guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future, in addition to attorneys' fees and costs.

139.     Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiffs' rights. Upon information and belief, one or more of Defendants managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive

EXHIBIT A  PAGE 38

damages are warranted against Defendants.

## NINTH CAUSE OF ACTION

## FRAUD AND DECEIT

(Civ. Code §§ 1571-1574 and 1709-1710)

(Against all Defendants)

140. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

141. California Civil Code § 1571 provides that fraud may be actual or constructive.

142. California Civil Code § 1572 provides: "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive." California Civil Code § 1574 adds that actual fraud is always a question of fact.

143. California Civil Code § 1573 provides: "Constructive fraud consists: 1. In any breach of duty which, without actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

144. California Civil Code §§ 1709 and 1710 define deceit.

145. California Civil Code § 1709 provides: "One who willfully deceives another with

intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

146. California Civil Code § 1710 provides: "A deceit, within the meaning of the last section, is either: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it."

147. Plaintiffs are informed and believes and, based thereon, alleges that the fictitious Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

148. Defendants, through Manager George Laris, represented to Plaintiffs that in return for clocking in and out for less time than the actual hours worked, he would "make it up to him."

149. Defendants, through management made these representations so that they did not have to pay Plaintiff them full wages.

150. Defendants made these representations so that they did not have to pay Plaintiffs their full wages.

151. As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages, including monetary losses and the loss of alternative opportunities which were foregone to contract with Defendants. Plaintiffs have also suffered harm to through mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiffs are entitled to attorneys' fees, costs, and injunctive relief.

152. Defendants, through their officers, managing agents, and/or their supervisors,

authorized, condoned and/or ratified the unlawful conduct described hereinabove. By reason thereof, the Plaintiffs are entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorneys' fees and costs, pursuant to statute.

153. Moreover, in that, at all times referenced herein, Defendants intended to cause or acted with reckless disregard of the probability of causing injury to Plaintiffs and, because Defendants was guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future, in addition to attorney's fees and costs.

## TENTH CAUSE OF ACTION
## BREACH OF CONTRACT

(Civil Code)

(Against all Defendants)

154. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

155. To recover damages for breach of contract, an injured party most prove all of the following: (1) that the parties formed a contract; (2) that the injured party did all, or substantially all, of the significant things that the contract required him to do or was otherwise excused; (3) that all conditions required by the contract for the Defendants' performance occurred or were excused; and (4) the Defendant did something or failed to do something that violates the contract. California Civil Jury Instructions. (CACI No. 303)

156. Both Plaintiffs Ramos and Matos entered into contracts with Defendants upon hire and throughout the term of their employment. The contract was in writing, oral and implied-in-fact. Plaintiffs were promised that their employment would be secure as long as their performance was satisfactory, that they would not be terminated without good cause, and that

*Matos v. ABM, et al*          Page 27 of 42          Case Nos.: CV-19-004708

plaintiffs would be paid for the work they performed. Plaintiffs undertook and continued employment and duly performed all of the conditions of the employment agreement to be performed by them.

157. Defendants breached the contract as to both Defendants by not paying them for work they performed.

158. Plaintiffs suffered damages legal caused by the breach of contract as described in this Complaint, all paragraphs of which are incorporated here to the extent pertinent as if set forth here in full.

159. Plaintiffs are informed and believe that the fictious Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Complaint.

160. As a direct and proximate result of Defendants' conduct, Plaintiffs sustained damages, including, but not limited to, monetary losses, missed opportunities, mental anguish, emotional distress, and/or medical related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiffs are entitled to attorneys' fees, costs, and injunctive relief.

## ELEVENTH CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Civil Code)

(Against all Defendants)

161. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

162. The agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendants to perform the terms and conditions of the agreement

fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiffs from performing any or all of the conditions of the agreement that they agreed to perform, or any act that would deprive Plaintiffs of the benefits of the agreement.

163. Defendants failed to follow the agreed-upon terms of the bargain as to both Defendants.  Defendants summarily terminated Plaintiff Matos' employment and failed to address Plaintiff Ramos' requests for a lunch break. Defendants breached the implied covenant of good faith and fair dealing under the contract by discharging Plaintiff Matos without just or probable cause, in bad faith and for reasons extraneous to the contract. Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive the Plaintiff of the benefits thereof. Defendants further breached the implied covenant of good faith and fair dealing by violating and failing to follow its own personnel policies and past practices.

164. Plaintiffs performed all the duties and conditions of the contract.

165. Defendants knew that Plaintiffs had fulfilled all their duties and conditions under the contract.

166. Defendants further breached the implied covenant of good faith and fair dealing by violating and failing to follow the terms of the contract.

167. As a proximate result of Defendants s' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and continue to suffer, monetary losses and other damage in an amount to be established at trial. As a further proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have incurred reasonable attorney's fees in attempting to secure the benefits owed to them under the employment contract

168. Plaintiffs are informed and believe and, based thereon, allege that the fictitious Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled,

coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

169. As a direct and proximate result of Defendants' conduct, Plaintiffs sustained damages, including, but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities, mental anguish, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiff is entitled to attorneys' fees, costs, and injunctive relief.

## TWELFTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
(Bus. & Prof. Code §§ 17200 *et seq.*)

(Against all Defendants)

170. Plaintiffs incorporate in this Cause of Action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

171. Plaintiffs bring this cause of action individually and on behalf of all others similarly situated.

172. Defendants violations of California law, including Defendants violations of the Employment Laws and Regulations as alleged herein constitutes an unfair business practice in violation of California Business & Professions Code § 17200 *et seq*, because they were done repeatedly, over a significant period of time, and in a systematic manner to the detriment of Plaintiffs.

173. In addition, Plaintiffs bring this cause of action seeking equitable and statutory relief to stop Defendants' misconduct, as complained of herein, and to seek restitution of the amounts Defendants acquired through the unfair, unlawful, and fraudulent business practices described herein.

174. Defendants' knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-17208. Specifically, Defendants conducted business activities while failing to comply with the legal mandates cited herein.

175. Defendants' business practices were unfair as set forth herein, providing an independent basis to support this claim.

176. Defendants' business practices were also fraudulent, as set forth herein, providing yet another independent basis to support the claim.

177. As a result of Defendants' unfair business practices, Plaintiffs have worked many hours without pay, and Defendants have reaped unfair benefits at Plaintiffs' expense.

178. Plaintiff is informed and believes and, based thereon, alleges that the fictitious Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

179. Defendants has clearly established a policy of accepting a certain amount of collateral damage as incidental to its business operations, rather than accepting the alternative costs of full compliance with fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record. Defendants' policy is confirmed by Plaintiffs' damages as herein alleged.

180. Defendants unfair business practices entitle Plaintiffs to seek preliminary and permanent injunctive relief and other restitutionary relief, including but not limited to orders that Defendants account for and restore unlawfully withheld compensation to the Plaintiffs and discontinue certain unlawful employment practices, conduct and implement adequate training, including the implementation of policies and procedures designed to prevent the legal violations at issue in this lawsuit. Defendants' unfair business practices also entitle Plaintiffs to attorney's

EXHIBIT A PAGE 45

fees and costs.

181. Plaintiffs seek restitution, declaratory and injunctive relief, and other relief allowable under § 17200, *et seq.*

### CAUSES OF ACTION APPLICABLE TO PAULO MATOS
### THIRTEENTH CAUSE OF ACTION
### UNLAWFUL RETALIATION IN VIOLATION OF PUBLIC POLICY

(Lab. Code §§ 98.6, 230, 232, 232.5, 1102.5; *Tameny v. Atlantic Richfield Company*)

(Against all Defendants)

182. Under California law, there is a fundamental and well-established public policy against discrimination, harassment or retaliation based on the fact that the employee has a protected characteristic or engaged in protected activity. Said public policy is embodied in the Constitution of the State of California and Cal. Lab. Code §§ 98.6, 230 [due to service as a jury member, witness, or for relief from domestic violence], 232 [due to disclosure of amount of wages], 232.5 [due to disclosure of working conditions] and other sections of the Lab. Code. Adverse employment actions taken by an employer motivated by the fact that an employee has a protected characteristic are contrary to said public policy and are thus actionable under the common law of this state.

183. Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield Company* (1980) 27 Cal. 3d 167.

184. Cal. Lab. Code § 98.6 provides, "(a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter [i.e. Lab. Code §§ 79-107], including the conduct described in subdivision (k) of Section 96, and Chapter 5 [i.e. Lab. Code §§ 1101-1106] (commencing with § 1101) of Part 3 of

Division 2, or because the employee or applicant for employment has filed a bona fide

Complaint or claim or instituted or caused to be instituted any proceeding under or relating to his

or them rights that are under the jurisdiction of the Labor Commissioner, made a written or oral

complaint to Court, or because the employee has initiated any action, or has testified or is about

to testify in a proceeding pursuant to that section, or because of the exercise by the employee or

applicant for employment on behalf of himself, herself, or others of any rights afforded him or

her." Any person whose rights are violated according to Lab. Code §98.6(a) "shall be entitled to

reinstatement and reimbursement for lost wages and work benefits caused by those acts of the

employer." Lab. Code § 98.6(b)(1).

185. "In addition to other remedies available, an employer who violates this section is

liable for a civil penalty not exceeding ten thousand dollars ($10,000.00) per employee for each

violation of this section, to be awarded to the employee or employees who suffered the

violation." Lab. Code § 98.6(b)(3).

186. Cal. Lab. Code § 232 provides, "No employer may do any of the following: (a)

Require, as a condition of employment, that an employee refrains from disclosing the amount of

his or them wages. (b) Require an employee to sign a waiver or other document that purports to

deny the employee the right to disclose the amount of his or them wages. (c) Discharge, formally

discipline, or otherwise discriminate against an employee who discloses the amount of his or

them wages."

187. Cal. Lab. Code § 232.5 provides, "No employer may do any of the following: (a)

require, as a condition of employment, that an employee refrains from disclosing information

about the employer's working conditions. (b) Require an employee to sign a waiver or other

document that purports to deny the employee the right to disclose information about the

employer's working conditions. (c) Discharge, formally discipline, or otherwise discriminate

against an employee who discloses information about the employer's working conditions. (d) This section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or them employer."

188. Cal. Lab. Code § 1102.5(b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information…to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance…if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Under California law, discharge of an employee perceived to have reported an alleged violation of a statute or regulation violates public policy, even if the employee did not actually make the report. Perceived whistleblowers are also protected from retaliatory discharge as are employees who report suspected violations to other employees. *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913 (2014).

189. Section 1102.5(f) provides that "in addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation" of Lab. Code § 1102.5.

190. Cal. Lab. Code § 1102.6 provides, "In a civil action or administrative proceeding brought pursuant to § 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by § 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by § 1102.5."

191. Cal. Lab. Code § 1102.8 provides, "An employer shall prominently display in lettering larger than size 14 point type a list of employees' rights and responsibilities under the whistleblower laws, including the telephone number of the whistleblower hotline described in Section 1102.7."

192. Cal. Lab. Code § 1104 provides, "In all prosecutions under this chapter [i.e. Lab. Code §§ 1100-1106], the employer is responsible for the acts of his managers, officers, agents, and employees." After plaintiff Matos complained about the number of deliveries, unbearable workload without breaks and general horrible working conditions, he was asked to remain at home and "be on stand-by" until the "big boss" came into town. Subsequently, he was terminated over the phone in violation of public policy. Defendants retaliated against Plaintiff Matos, because Plaintiff Matos has a protected characteristic and/or engaged in protected activity.

193. Plaintiff is informed and believes and, based thereon, alleges that Defendants' conduct, as described herein, was substantially motivated by Plaintiff's opposition to and/or reporting of the actual and/or perceived violations described herein.

194. Plaintiff is informed and believes and, based thereon, alleges that all Defendants, including the Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

195. The conduct of Defendants described hereinabove was outrageous, and was executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

196. As a proximate result of Defendants' wrongful acts, Plaintiff has suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings,

bonuses, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

197. Defendants, through their officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described hereinabove. By reason thereof, the Plaintiff Matos is entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorney's fees and costs, pursuant to statute.

## FOURTEENTH CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

*(Tameny v. Altantic Richfield Company)*

(Against all Defendants)

198. Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield Company* (1980) 27 Cal. 3d 167.

199. Defendants terminated Plaintiff's employment based upon Plaintiff having a protected characteristic and/or engaging in a protected activity, as alleged herein.

200. Plaintiff is informed and believes and, based thereon, alleges that Defendants' conduct, as described herein, was substantially motivated by Plaintiff having a protected characteristic and/or engaging in a protected activity, as alleged herein.

201. Plaintiff is informed and believes and, based thereon, alleges that all Defendants, including the Defendants named as DOES 1 through 100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

202. The conduct of Defendants described hereinabove was outrageous and was executed with malice, fraud, and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

EXHIBIT A  PAGE 50

203. As a proximate result of Defendants wrongful acts, Plaintiffs have suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings, bonuses, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

204. Defendants, through their officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described hereinabove. By reason thereof, the Plaintiff is entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorney's fees and costs, pursuant to statute.

## FIFTEENTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL

*(C & K Engineering Contractors v. Amber Steel Co.)*

(Against all Defendants)

205. Defendants are liable for damages based on the doctrine of Promissory Estoppel. Restatement 90 of the Restatement of Contracts incudes the elements of the doctrine as follows, "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." The foregoing rule has been adopted in California. *C & K Engineering Contractors v. Amber Steel Co.*, 23 Cal. 3d 1, 6 (1978).

206. The doctrine of promissory estoppel states that injured parties can recover damage if such damages were the result of a promise made by a promisor that the promise was sufficiently significant to move the promise to act on it. The following specific elements must be present: (1) promisor made a promise significant enough to cause the promise to act on it, (2) promise relied upon the promise, (3) promise suffered a significant detriment, and (4) relief can only come in

the form of the promisor fulfilling the promise of paying for the damages caused.

207. Here, Defendants, through their agents, made repeated promises to Plaintiff Matos. After he complained about the untenable working conditions, they said they were looking into it and he should remain on "stand-by" while they look into the issue and they would schedule a meeting with the "big boss" who was coming into town. Matos relied on this promise and waited with the good faith belief that management understood he was recovering from injuries (specifically two hernias from lifting the break onto the lift of his truck) and would adjust his workload accordingly.

208. Matos continued to want to return to work, and in fact, believed he would be returning to work.  Because of this, he did not pursue finding subsequent employment.

209. Matos forfeited opportunities for other employment because Defendants assured him he would be back at work.

210. For the reasons set forth above and in satisfaction of the elements of the doctrine of promissory estoppel, Defendants must perform on the promises.

211. As a proximate result of Defendants' wrongful acts, Plaintiffs have suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings, bonuses, deferred compensation, stock options, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

212. Defendants, through their officers, managing agents, and/or their supervisors, authorized, and approved the unlawful conduct described herein above.

## SIXTEENTH CAUSE OF ACTION

## FAILURE TO PROVIDE ADEQUATE TIME OFF

(Lab.Code. §§ 551, 552, 554 558)

(Against all Defendants)

213. California law provides that every employee is entitled to one day's rest in seven

days and prohibits employers from requiring employees to work more than six days in seven.

214. Thus, an overtime rate must be paid for hours voluntarily worked on the seventh day in seven. Plaintiff Matos was required to work a seven day week frequently.

215. Defendants did not pay overtime compensation when Plaintiffs worked these seven-day weeks. Accordingly, Defendants violated Lab. Code §§ 551, 552, 554 558.

216. Plaintiff is entitled to compensation in the form of overtime not paid. Defendants are required to pay a civil penalty for each pay period Plaintiffs experienced this violation, in addition to attorney's fees and costs.

217. Plaintiff Matos endured a work environment in which he was expected to work long hours and did not receive accrued sick and vacation days off when he requested them. Defendants, through their agents, maintained an abusive unlawful work environment. As such, punitive damages are warranted against Defendants.

**CAUSE OF ACTION APPLICABLE TO MONICA MATOS**

**SEVENTEENTH CAUSE OF ACTION**

**LOSS OF CONSORTIUM**

(Civil Code,
*Rodriquez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382)

(Against all Defendants)

218. California recognizes "Loss of Consortium" as the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support and/or sexual relations following a wrongful injury to one's spouse or registered domestic partner. California Civil Jury Instructions. (CACI No. 3920)

219. To prevail in a claim for loss of consortium, there are four elements a spouse must prove:

     a. The spouse or partner was injured by someone else's negligence or other

wrongful act.

b. The Plaintiff and the injured person were lawfully married or had a valid registered domestic partnership at the time of the injury.

c. The Plaintiff suffered the loss of his or her spouse's or partner's consortium.

d. Such loss resulted from the Defendant's wrongful act. *Rodriquez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382 (1974).

220. As alleged previously in this Complaint, and as a result of the conduct of the Defendants, Plaintiff Matos suffered two hernias sustaining injuries and damages.

221. Plaintiff Paulo Matos and Monica Matos were lawfully married at all time relevant to this action, and now are husband and wife.

222. As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff Monica Matos's spouse, Paulo Matos has been deprived, continues to be deprived, and expects to be deprived in the future, of her spouse's companionship, affection, love, sexual relations, conjugal fellowship, physical assistance in maintaining the family home and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and is the future is expected to cause Plaintiff to suffer depression, emotional distress, loss of earning capacity, past, present, and future and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

223. As a direct and proximate result of the Defendants' wrongful acts, and omissions to act, in conscious disregard to the rights and safety of others, including but not limited to Plaintiffs herein so as to warrant the imposition of punitive damages allowed by law.

### JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues and causes of action.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for the following forms of relief, individually and on behalf of all others similarly situated:

1. For penalties pursuant to all provisions of the Cal. Lab. Code referenced herein which provide for penalties as a result of the conduct alleged herein;

2. For costs of suit incurred herein and attorney's fees pursuant to the statutes cited herein;

3. For compensatory damages;

4. Compensation for all hours worked but not paid;

5. For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

6. For special damages according to proof;

7. For punitive damages where allowed by law;

8. For restitution of all monies due to the Plaintiffs from the unlawful business practices of Defendants;

9. For injunctive relief;

10. For pre-judgment and post-judgment interest as provided by law; and

11. For such other and further relief as this Court deems just and proper.

Date: 8/13/19                    THE SHERRON LAW FIRM, PC


Harpreet Singh, Esq.
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

1

2          Plaintiff hereby demands a trial by jury on all issues triable by a

3  a jury in the above-entitled action.

4

5

6  Dated: 8·13·19                    THE SHERRON LAW FIRM, PC

7

8                                    Harpreet Singh, Esq.
                                     Sherron Law Firm, PC
9                                    Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28